IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| KERRY G. RIKARD, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 04-3360-CV-SW-ODS-SSA ) |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

## ORDER AND OPINION AFFIRMING COMMISSIONER
## OF SOCIAL SECURITY'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff's request for review of the final decision of the Commissioner of Social Security denying his application for disability benefits. After reviewing the record, the Court affirms the Commissioner of Social Security's final decision.

### I. BACKGROUND

Plaintiff filed an application for disability insurance benefits on September 9, 2002, alleging that he became disabled August 11, 2002 (Tr. 60). After a hearing was held, the Administrative Law Judge ("ALJ") issued a decision on April 8, 2004, finding that Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review on July 15, 2004. Thus, the decision of the ALJ remains the final decision of the Commissioner relevant to this appeal.

### A. Administrative Hearing

In a hearing before the Administrative Law Judge ("ALJ") on July 14, 2003, Plaintiff testified that he was forty-three years old and had completed the eleventh grade. (Tr. 309-10). Plaintiff worked as an auto body technician but has not worked since August 11, 2002. (Tr 314).

Plaintiff testified that he has problems with his left knee and shoulder due to

degenerative joint disease. (Tr. 312). He has had three surgeries on his left knee and two surgeries on his left shoulder. (Tr. 284). On a scale of one to ten, with ten being the worst, Plaintiff testified that the pain in his shoulder ranks at an eight or a nine and that lifting as little as ten pounds or reaching to turn a steering wheel aggravates that pain. (Tr. 318). Plaintiff reported that the pain in his shoulder radiates up to his neck and that the neck pain ranks at a six or a seven. (Tr. 319). Plaintiff reported experiencing migraine headaches three times per week which he treats with Excedrine Migraine and by lying down in a dark room. (Tr. 321-22).

Plaintiff also testified that the pain in his left knee, when not treated with pain medication, ranks around an eight or a nine on a ten-point scale. (Tr. 327). Plaintiff testified that in order to reduce this pain he takes anti-inflammatories and sits with the knee elevated above his heart for one to two hours, three to four times per day. (Tr. 325). He cannot sit for more that an hour at a time. (Tr. 312). The pain in the knee also prevents him from standing for more than an hour or two. (Tr. 326).

Plaintiff's wife, Becky Rikard, also testified on his behalf. She confirmed Plaintiff's description of his ability to sit and stand for prolonged periods and that he sits with the knee elevated on a daily basis. (Tr. 337). She testified that he has difficulties performing household tasks like carrying groceries. (Tr. 336). She testified that he has limited use of his left arm. (Tr. 338).

Vocational Expert (VE) George Horne testified at the hearing. He identified Plaintiff's past relevant work as an automobile body repairer. (Tr. 340). The ALJ posed a hypothetical question asking whether a person with the same age, education and vocational profile as Plaintiff, capable of light exertional activity, but who had to alternately sit, stand and walk, and who had no effective use of his non-dominant arm could work. The VE testified that such a person could not return to his past relevant work, but but such a person could perform work as a cashier or a ticket taker, which would accommodate the need to alternate between sitting and standing. (Tr. 341).

When asked whether the need to sit with legs elevated for several hours during an eight hour workday would preclude sedentary work, the VE responded that such work would be impossible. (Tr. 342). When asked whether the frequency of the need

to alternate between sitting and standing could affect the ability to perform the jobs listed, the VE testified that increased frequency could preclude such work. (Tr. 344). The VE also testified that the positions discussed would be impossible if the applicant were unable to stoop and bend. (Tr. 344). The VE further testified that a person experiencing side effects of nausea and drowsiness, such that job duties would be difficult for one to two hours a day, or a person suffering from headaches that preclude working for one to two hours once or twice per week, would be unable to work as a cashier or a ticket taker. (Tr. 345-346).

### B. Medical Records

In June 27, 1996, Plaintiff underwent arthroscopic surgery of the left knee. (Tr. 189). Throughout December 1996, Plaintiff returned to Dr. David W. Brown, the surgeon who performed the procedure, reporting continued pain in his left knee, and diagnostic arthroscopic surgery was performed on January 7, 1997. (Tr. 194).

On July 15, 1998, Plaintiff presented to David Rogers, M.D., following a work-related injury to his left shoulder. (Tr. 227). He was diagnosed with impingement syndrome and degenerative joint disease in his left shoulder. (Tr. 227). Arthroscopic surgery was performed on his left shoulder. (Tr. 225).

On April 12, 2000, Plaintiff visited Paul R Frewin, M.D. (Tr. 162). While at work, Plaintiff stepped backwards off a step and his left knee "bounced" and "gave way." (Tr. 162). Plaintiff experienced "burning" pain and swelling in his left knee and complained of a "tingling" in his left foot. (Tr. 162). On April 14, 2000, Plaintiff underwent arthroscopic surgery for the third time to his left knee. (Tr. 161-63).

In June 2002, Plaintiff visited Rodger Moler, D.O., complaining of dizziness and disorientation. (Tr. 151). Dr. Moler ordered a CT scan, which was unremarkable. (Tr. 141-42). On July 22, 2002 Plaintiff again visited Dr. Moler, reporting that his dizziness had improved but he was experiencing pain in the shoulder and knee. (Tr. 149). Dr. Moler examined the knee and reported "no pain, although some gritty crepitance with external rotation and extension of the knee in the medial aspect of the joint itself." (Tr. 149).

Still complaining of recurrent problems with his left knee on September 5, 2002, Plaintiff had an MRI of the knee that showed mild hardening of the fat pad located on the inside of the knee, and some cartilage thinning of the weight bearing aspect of the thigh. (Tr. 134). Upon visiting Dr. Moler following his MRI, Plaintiff reported persistent pain in his knee and shoulder and received a steroid injection. (Tr. 147). On September 30 2002, Dr. Frewin noted mild atrophy of the left quadriceps and suggested that plaintiff might be suffering from "mild degenerative osteoarthrosis of the left knee and possible left knee Hoffa's disease." (Tr. 157-58).

On December 2, 2002, Plaintiff returned to Dr. Rogers with continuing pain in his left shoulder. (Tr. 255). On December 4, 2002, an MRI was performed on Plaintiff's shoulder, which showed "significant partial thickness rotator cuff pathology," and Dr. Rogers opined that further arthroscopy could be beneficial but that Plaintiff should seek alternative employment in order to avoid further shoulder problems. (Tr. 252, 255). On January 10, 2003 a second arthroscopic shoulder surgery was performed. (Tr. 265). On February 10, 2003, Plaintiff reported experiencing less pain. (Tr. 249).

On May 20, 2003, Plaintiff visited Jacqueline Carter, Psy.D., for a psychological evaluation. (Tr. 229). The Minnesota Multiphasic Personality Inventory was administered, but the result was invalid due to an elevated "L score" indicating an unsophisticated attempt by the test-taker to present himself in a favorable light. (Tr. 231).

In September of 2003, Plaintiff visited Ted Lennard, M.D., for a consultative examination. (Tr. 284-290). Dr. Lennard diagnosed the following limitations on Plaintiff's ability to work: occasionally lift and carry up to twenty pounds; frequently lift and carry up to ten pounds; stand or walk for up to two hours; sit for up to six hours; limited ability to push/pull in upper extremities; no climbing, kneeling, crouching or crawling; occasional balancing and stooping; limited reaching in all directions; and unlimited handling, fingering, feeling, seeing hearing, and speaking. (Tr. 288-290).

### C. ALJ's Decision

The ALJ concluded that Plaintiff has severe impairments because he was "status-post shoulder and knee surgery," but Plaintiff's allegations regarding headaches and depression lacked credibility and were "non-severe." (Tr 17-18). The ALJ determined that these impairments did not meet or equal the criteria of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18).

The ALJ acknowledged that Plaintiff cannot perform his previous work but determined that Plaintiff could perform other work. In reaching this decision the ALJ relied upon the responses of the VE as to whether a person with Plaintiff's residual functional capacity (RFC) could find such work. The ALJ cited, as examples of such jobs, work as a surveillance systems operator and as a call out operator. (Tr. 26).

## II. DISCUSSION

Plaintiff appeals the decision of the Commissioner of Social Security Administration claiming the ALJ: (1) improperly discounted Plaintiff's testimony by performing an improper credibility analysis as per Polaski v. Heckler, and (2) improperly derived a Residual Functional Capacity by failing to consider Plaintiff's headaches and depression.

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Smith v. Schweiker, 728 F.2d 1158, 1161-62 (8th Cir. 1984).

5

## A. Plaintiff's Credibility

Plaintiff argues the ALJ erred by performing an improper credibility analysis. The familiar standard for analyzing a claimant's subjective complaints is set forth in Polaski v. Heckler:

> While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced. The adjudicator may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them.
>
> The absence of an objective medical bias which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
> 1. the claimant's daily activities;
> 2. the duration, frequency and intensity of the pain;
> 3. precipitating and aggravating factors;
> 4. dosage, effectiveness and side effects of medication
> 5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective complaints solely on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

739 F.2d at 1322 (subsequent history and internal citations omitted). Although a claimant's subjective complaints cannot be disregarded solely because they are not fully supported by objective medical evidence, they may be discounted if there are inconsistencies in the record as a whole. See Wilson v. Chater, 76 F.3d 238, 241 (8th Cir. 1996). In this case, the ALJ noted discrepancies in the record regarding Plaintiff's reported headaches and depression.

6

Concerning Plaintiff's reported headaches, the ALJ pointed out that "there is no medical evidence to substantiate any significant limitations associated with this impairment, and the claimant has not required medical treatment, frequent hospital confinement, or surgical intervention." (Tr. 17). Plaintiff testified that he takes no prescription medications for headaches; instead, Plaintiff takes Excedrine Migraine for his headaches and that "take[s] care of them." (Tr. 322). Further, the ALJ noted repeated instances in which Plaintiff might have mentioned his frequent headaches to various examining physicians but failed to do so. (Tr. 18).

Concerning Plaintiff's reported depression, the ALJ noted that "the record is silent as to any treatment. (Tr. 18). The absence of any evidence of treatment strongly supports the ALJ's decision. "[F]ailure to seek medical assistance for [his] alleged physical and mental impairments contradicts [his] subjective complaints of disabling conditions and supports the ALJ's decision to deny benefits." Gwathney v Chater, 104 F.3d 1043, 1045 (8th Cir. 1997) (citing Ostronski v. Chater, 94 F.3d 413, 419 (8th Cir. 1996)); see Gowell v. Apfel, 242 F.3d 793, 798 (8th Cir. 2001) (stating that a lack of ongoing counseling or psychiatric treatment or change in mental capabilities disfavored a disability finding).

In making these determinations, the ALJ specifically pointed to the absence of objective medical evidence in the record to support Plaintiff's assertion of disability relating to headaches and depression. (Tr. 17). Under Polaski this is an appropriate factor for the ALJ to take into consideration when determining credibility. Id. at 1322. In light of this evidence, the ALJ could properly find Plaintiff's subjective complaints regarding his headaches and migraines not credible.

### B. Residual Functional Capacity

Plaintiff contends that the ALJ improperly derived the RFC because it was arbitrary and failed to consider Plaintiff's non-severe impairments of headaches and depression in violation of SSR 96-8p. The ALJ must formulate Plaintiff's residual functional capacity based on all the relevant, credible evidence of the record. McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000).

Plaintiff argues that "[w]hile a 'not severe' impairment standing alone may not significantly limit an individual's ability to do basic work activities, it may–when considered with limitations or restrictions due to other impairments–be critical to the outcome of a claim." SSR 96-8p. Plaintiff thus argues that the ALJ erred by not considering the non-severe impairments of headaches and depression. However, as discussed above, the ALJ was not required to find these limitations credible. SSR 96-8p requires that limitations reflect what a person is able to do on a regular and continuing basis. The ALJ determined that Plaintiff had the following residual functional capacity: lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk two hours in an eight hour workday continuously; sit six hours in an eight hour workday continuously; limited upper extremity push/pull; never climb, kneel, crouch, or crawl; occasionally balance and stoop; limited reaching in all directions (including overhead) with the left upper extremity; unlimited handling, fingering, feeling, seeing, hearing, and speaking; and no environmental limitations.

Based on this RFC, the ALJ agreed that Plaintiff would not be able to continue his previous work but would be able to perform other work available in substantial numbers in the economy. (Tr. 26) The ALJ considered all of the objective medical evidence, the Plaintiff's testimony and the testimony of a vocational expert in making his decision. Thus, substantial evidence in the record supports the ALJ's determination of Plaintiff's RFC.

Plaintiff further argues that the ALJ erred in deriving Plaintiff's RFC by not providing a narrative statement of how the evidence supports each conclusion reached. The ALJ's decision contains a thorough discussion of the five-step sequential evaluation necessary to determine a claimant's eligibility for disability insurance benefits. In determining the Plaintiff's RFC, the ALJ relied upon the credible testimony of the Plaintiff, the Plaintiff's witness, the testimony and interrogatory responses of the VE and the Plaintiff's medical records. Thus, the record as a whole contains substantial evidence to support the decision of the ALJ.

## III. CONCLUSION

For the foregoing reasons, the Commissioner's final decision denying benefits is affirmed.

IT IS SO ORDERED.

DATE: June 15, 2005                              /s/ Ortrie D. Smith
                                                 ORTRIE D. SMITH, JUDGE
                                                 UNITED STATES DISTRICT COURT